# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| AUNSHAWN HENDERSON, on behalf of himself and all others similarly situated, | Civil Action No. 3:18-cv-006 |
| Plaintiff, | Class and Collective Action |
| v. | |
| KRIEGER BEARD SERVICES, LLC, | Jury Trial Demanded |
| Defendant. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### INTRODUCTION

1. This is a class and collective action brought on behalf of telecommunications installation technicians who performed satellite television installation services for Krieger Beard Services, LLC ("KBS" or "Defendant") in Indiana and Illinois and who were classified as independent contractors. KBS has contracts with AT&T and DirecTV to perform satellite television installation services, and employs technicians such as Plaintiff to perform these services. Although it classifies these technicians as independent contractors, KBS controls every aspect of how these technicians perform their work. As set out below, the technicians are in fact employees of KBS, and are thus denied the protections of the Fair Labor Standards Act and Illinois and Indiana law. Specifically, the technicians do not receive overtime for hours worked in excess of 40 a week, and are subject to a host of improper deductions.

2. Plaintiff Aunshawn Henderson brings claims individually and on behalf of a class of similarly situated satellite installation technicians who have worked as independent contractors for KBS in Indiana and Illinois and who may opt in to this case under the Federal

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. KBS has violated the FLSA by failing to pay these individuals time-and-a-half their regular rate for hours worked in excess of 40 a week.

3. Plaintiff also brings claims under Rule 23 of the Federal Rules of Civil Procedure on behalf classes of similarly situated telecommunications installation technicians who have worked as independent contractors for KBS in Indiana and Illinois. By improperly classifying satellite installation technicians as independent contractors, failing to pay them time-and-a-half their regular rate for hours worked in excess of 40 a week, and making improper deductions from their pay, KBS violated Indiana and Illinois state law.

## **PARTIES**

4. Plaintiff Aunshawn Henderson ("Plaintiff") is an adult resident of Indianapolis, Indiana. Plaintiff has worked as a satellite installation technician for KBS from June 2016 to May 2017 in Indiana and Illinois. Pursuant to 29 U.S.C. § 216 (b), he has consented in writing to being a Plaintiff in this action. *See* Exhibit A.

5. Defendant Krieger Beard Services, LLC ("Defendant" or "KBS") is a company with its principal place of business in Troy, Ohio. KBS provides satellite television installation services for AT&T and DirecTV in several states, including Indiana and Illinois and within this District. KBS may be served through its registered agent National Registered Agents, Inc., 4400 Easton Commons Way, Ste. 125, Columbus, OH 43219.

## **JURISDICTION AND VENUE**

6. This Court has general federal question jurisdiction pursuant to 28 U.S.C. §1331, because Plaintiff has brought a claim pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. This Court also has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

7. Venue is proper in this Court because Defendant has its principal place of business in this District, in Troy, Ohio; and pursuant to a forum selection provision in the parties' contract.

## STATEMENT OF FACTS

8. Plaintiff worked for KBS as a satellite installation technician from June 2016 to May 2017 in Illinois and Indiana. During this time, Plaintiff worked exclusively for KBS.

9. In order to perform work for KBS, Plaintiff and the other technicians were required to sign an agreement drafted by KBS, which stated that they were independent contractors when the economic reality of the position is that of an employee. KBS retains the right of control, and, in fact, actually does control the work.

10. As a result of the misclassification of its Technicians, KBS did not pay them in accordance with the FLSA and state wage laws and otherwise forced the technicians to bear the costs of KBS' business.

11. The work performed by Plaintiff and Class Members is an integral part of the KBS' business. KBS is in the business of providing satellite television installation services for AT&T and DirecTV in several states. Plaintiff and Class Members installed, provided technical services, and sold cable products.

12. Plaintiff's and Class Members' duties do not involve managerial work. They follow the training and protocols provided to them by KBS in performing their work, which is basic installation and technical services.

13. KBS assigned Plaintiff an identification number and assigned him jobs every day

through a smartphone application called MobiControl. Plaintiff used this application to "check in" to each job assignment and "check out" once he completed the job. Other Class Members were assigned identification numbers and assigned jobs through MobiControl or similar application.

14. Through the MobiControl application, KBS specified the types of services to be performed, the equipment needed for each job assignment, and the location and timeframe for each job assignment. Every morning, Plaintiff had to open the application and "acknowledge" the jobs assigned to him for the day.

15. Plaintiff's and Class Members' work does not require special skills, judgment or initiative. KBS provided training to Plaintiff and Class Members, which they used to provide technical services to KBS' customers.

16. Plaintiff and Class Members were required to wear a uniform with an AT&T/DIRECTV logo, khaki pants, and boots when performing work for KBS.

17. In addition, Plaintiff and Class Members were required to attend periodic trainings, hosted by KBS, in which he was instructed on how to install specific equipment.

18. Every morning, at 7 AM, Plaintiff was required to report to a KBS warehouse in Gary, Indiana, in order to pick up the equipment he needed for the day's assignments and to check in with a KBS supervisor employee. There were approximately 10-15 other technicians who reported to this warehouse; approximately 60 technicians reported to the KBS warehouse in Plymouth, Indiana.

19. After picking up the equipment as specified by KBS, Plaintiff and Class Members went about the assigned jobs for the day. Each job assignment had an associated timeframe. Plaintiff was required to report to his first job for the day by 8 AM. His last job assignments

usually went until 5 or 6 PM.

20. During the day, Plaintiff and Class Members were required to check the MobiControl application for any additional job assignments. If a technician declined these additional assignments, he/she could be suspended or terminated. On one occasion, Plaintiff was threatened by his supervisor with termination for declining a job assignment which required him to travel over 50 miles.

21. Plaintiff and Class Members were paid based on a point system, in which they received a certain amount of pay for each service performed. Plaintiff and Class Members could not bargain over the pay received for each service.

22. Plaintiff and Class Members routinely work in excess of forty (4) hours per week.

23. Plaintiff worked on average between eight (8) to ten (10) hours a day, five (5) to (6) days a week. Plaintiff observed that Class Members routinely worked the same schedule.

24. Although Plaintiff regularly worked fifty (50) or more hours a week, he was never paid time-and-a-half for hours worked in excess of forty (40) a week.

25. KBS, pursuant to its policies and practices, failed and refused to pay overtime compensation, for all hours worked over forty (40) in a workweek to Plaintiff and Class Members.

26. In addition, KBS shifted certain capital costs to Plaintiff and Class members while retaining behavioral and financial control over them in the same way it would over any of its employees.

27. Plaintiff and Class Members were subject to a host of deductions made by KBS from their pay. For example, Plaintiff had $1,000 taken out of his pay in order to cover any damage claims or other deductions; he had deductions made from his pay for his uniform; for

equipment which was allegedly lost; and for installations which he was told were not performed properly.

28. KBS has intentionally misclassified Plaintiff and Class Members to avoid KBS' obligations under the FLSA and state wage laws. KBS saves thousands of dollars in avoiding expenses associated with its core business by not providing Plaintiffs and the Classes with proper minimum wage, health, pension, or other benefits ordinary employees are entitled to and enjoy.

### COLLECTIVE ACTION ALLEGATIONS

29. Plaintiff brings Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) on behalf of himself and all similarly situated persons who work or have worked for KBS as satellite installation technicians within the last 3 years and who elect to opt-in to this action.

30. KBS unlawfully required Plaintiff and all individuals employed as satellite installation technicians to work in excess of 40 hours per week without paying them overtime compensation for every hour worked in excess of 40 hours per week.

31. Plaintiff and the FLSA Collective Action members are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to KBS' previously described common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, KBS' common compensation, timekeeping and payroll practices.

32. Plaintiff brings FLSA claims on behalf of himself and the following collective:

All current or former satellite TV installation technicians who performed work for KBS in Indiana and Illinois three years prior to the filing of their respective consent forms (hereinafter the "FLSA Collective").

33. KBS was aware or should have been aware that Plaintiff and other satellite

6

technicians were employees as a matter of economic reality, and that it was required to pay them an overtime premium of 1 and ½ times their regular rate of pay for all work-hours KBS suffered or permitted them to work in excess of 40 per workweek.

34. Upon information and belief, KBS applied the same unlawful policies and practices to their satellite technicians throughout the States of Indiana and Illinois and nationwide.

35. The FLSA Collective Action Members are readily identifiable, and may be located through KBS' records, as well as the records of any payroll companies that KBS utilizes. KBS employs many FLSA Collective Members in Indiana and Illinois. These similarly situated individuals may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

### INDIANA CLASS ACTION ALLEGATIONS

36. Plaintiff brings Count II of this Action on his own behalf and as a class action, pursuant to Fed R. Civ. P. 23(a) and (b), on behalf of the following class of persons:

> All current or former satellite TV installation technicians who performed work for KBS in Indiana three years prior to the filing of the Complaint (hereinafter the "Indiana Class").

37. The members of the Indiana Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 70 members of the Indiana class.

38. There are questions of law and fact common to the proposed Indiana Class Members, which predominate over any questions affecting only individual Indiana Class

Members, including, without limitation, whether KBS unlawfully deducted wages from the Indiana Class Members in violation of Indiana Code 22-2-6 and 22-2-4-4.

39. Plaintiff will fairly and adequately represent and protect the interests of the Indiana Class Members because there is no conflict between the claims of Plaintiff and those of the Indiana Class, and Plaintiff's claims are typical of the claims of the Indiana Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

40. Further, Plaintiff and the Indiana Class Members have been equally affected by KBS' failure to pay proper wages. Moreover, members of the Indiana Class still employed by KBS may be reluctant to raise individual claims for fear of retaliation.

41. Plaintiff's claims are typical of those of the Indiana Class. Plaintiff and the other Indiana Class Members were subjected to KBS' policies, practices, programs, procedures, protocols and plans alleged herein concerning unlawful deductions. Plaintiff's job duties are typical of those of the Indiana Class Members.

42. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Indiana Class is readily identifiable from KBS' own records. Prosecution of separate actions by individual members of the Indiana Class would create the risk of inconsistent or varying adjudications with respect to individual Indiana

Class Members that would establish incompatible standards of conduct for KBS.

43. A class action is superior to other available methods for adjudication of this controversy because joinder of all class members is impractical. Further, the amounts at stake for many of the Indiana Class Members, while substantial, are not great enough to enable them to maintain separate suits against KBS.

44. Without a class action, KBS will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff and the Indiana Class. Plaintiff envisions no difficulty in the management of this action as a class action.

## ILLINOIS CLASS ACTION ALLEGATIONS

45. Plaintiff brings Counts III-IV of this Action on his own behalf and as a class action, pursuant to Fed R. Civ. P. 23(a) and (b), on behalf of the following class of persons:

> All current or former satellite TV installation technicians who performed work for KBS in Illinois ten years prior to the filing of the Complaint (hereinafter the "Illinois Class").

46. The members of the Illinois Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, facts on which the calculation of that number can be based are presently within the sole control of KBS.

47. Upon information and belief, there are more than 40 members of the Illinois class.

48. There are questions of law and fact common to the proposed Illinois Class Members, which predominate over any questions affecting only individual Illinois Class Members, including, without limitation, whether KBS failed to pay Illinois Class Members overtime in violation of the Illinois Minimum Wage Law and whether KBS unlawfully deducted wages from the Illinois Class Members in violation of the Illinois Wage Payment and Collection Act.

49. Plaintiff will fairly and adequately represent and protect the interests of the Illinois Class Members because there is no conflict between the claims of Plaintiff and those of the Illinois Class, and Plaintiff's claims are typical of the claims of the Illinois Class. Plaintiff's counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

50. Further, Plaintiff and the Illinois Class Members have been equally affected by KBS' failure to pay proper wages. Moreover, members of the Illinois Class still employed by KBS may be reluctant to raise individual claims for fear of retaliation.

51. Plaintiff's claims are typical of those of the Illinois Class. Plaintiff and the other Illinois Class Members were subjected to KBS' policies, practices, programs, procedures, protocols and plans alleged herein concerning unlawful deductions. Plaintiff's job duties are typical of those of the Illinois Class Members.

52. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Illinois Class is readily identifiable from KBS' own records. Prosecution of separate actions by individual members of the Illinois Class would create the risk of inconsistent or varying adjudications with respect to individual Illinois Class Members that would establish incompatible standards of conduct for KBS.

53. A class action is superior to other available methods for adjudication of this

controversy because joinder of all class members is impractical. Further, the amounts at stake for many of the Illinois Class Members, while substantial, are not great enough to enable them to maintain separate suits against KBS.

54. Without a class action, KBS will retain the benefit of its wrongdoing, which will result in further damages to Plaintiff and the Illinois Class. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## Fair Labor Standards Act ("FLSA")

55. All previous paragraphs are incorporated as though set forth fully herein.

56. Plaintiff and members of the FLSA Collective are employees within the meaning of the FLSA, 29 U.S.C. § 201, *et seq.*, and are entitled to be paid overtime compensation for all overtime hours worked.

57. The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). The FLSA's definition of "employ" broadly covers anyone who is "suffer[ed] or permit[ed] to work." 29 U.S.C. § 203(g).

58. KBS is subject to the wage requirements of the FLSA because KBS is an "employer" under 29 U.S.C. § 203(d).

59. At all relevant times, Plaintiffs and the FLSA Collective are covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

60. Plaintiff and the FLSA Collective are not exempts from the requirements of the FLSA.

61. KBS employed Plaintiff and members of the FLSA Collective for workweeks

11

longer than 40 hours and willfully failed to compensate Plaintiff and members of the FLSA Collective for all of the time worked in excess of 40 hours per week, at a rate of at least 1 and ½ times their regular hourly rate, in violation of the requirements of the FLSA, 29 U.S.C. §207(a)(1).

62. KBS' compensation scheme applicable to Plaintiffs and the FLSA Collective fails to comply with 29 U.S.C. § 207(a)(1).

63. Plaintiff has expressed their consent to make these claims against KBS by filing a written consent form pursuant to 29 U.S.C. § 216(b).

64. KBS failed to make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and the FLSA Collective.

65. Because KBS' violations of the FLSA were willful, a 3 year statute of limitations applies, pursuant to 29 U.S.C. § 255.

66. As a consequence of the willful underpayment of wages, alleged above, Plaintiff and members of the FLSA Collective incurred damages thereby and KBS is indebted to them in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

**COUNT II**
**Indiana Code 22-2-6 and 22-2-4-4 (Indiana Class)**

67. All previous paragraphs are incorporated as though set forth fully herein.

68. At all relevant times, KBS was an employer of Plaintiff and the Indiana Class Members as defined by Indiana Code 22-2-2-3 and 610 IAC 6-1-4.

69. During all relevant times, Plaintiff and Indiana Class Members were covered employees within the meaning of Indiana Code 22-2-2-3.

70. KBS has unlawfully withheld money from the compensation earned by Plaintiff

and Indiana Class Members for business expenses of KBS, including damage claims, claims for installation problems, and lost equipment, in violation of Indiana Code 22-2-6. In addition, Defendant has failed to pay Plaintiff and Indiana Class members for their labor as required by Indiana Code 22-2-4-4. By and through the instant Complaint, Plaintiff and Indiana Class Members demand that payment be made for all illegal deductions made and unpaid wages due originating during the course of their employment with KBS.

71. KBS has withheld said funds unlawfully without providing Plaintiff and Indiana Class Members with advance notice of the amounts, reasons, or documentation to justify such deductions, and absent any lawfully sufficient reason for such conduct. As a result, Plaintiff and Indiana class members were not paid for their labor.

72. As a direct and proximate result of KBS' conduct, Plaintiff and Indiana class members have suffered substantial losses and have been deprived of compensation to which they were entitled, including penalties, in the amounts deducted and unpaid. Plaintiffs are entitled to recovery of these amounts, as well as pre-judgment interest, attorneys' fees and costs.

## COUNT III
## Illinois Wage Payment and Collection Act (Illinois Class)

73. All previous paragraphs are incorporated as though set forth fully herein.

74. At all relevant times, Plaintiff and the Illinois Class Members were "employees" of KBS as defined by the Illinois Wage Payment and Collection Act ("IWPCA").

75. At all relevant times, KBS was an employer of Plaintiff and the Illinois Class Members as defined by the IWPCA. *See* 820 Ill. Comp. Stat. 105/3(c).

76. The IWPCA, 820 Ill. Comp. Stat. 115/9, prohibits employers from making deductions from employees' wages.

77. KBS violated the IWPCA, 820 Ill. Comp. Stat. 115/9, by making, or requiring to

be made, unlawful deductions from Plaintiffs' and the Illinois Class Members' wages.

78. Plaintiff and Illinois Class Members seek all reimbursement for all unlawful deductions taken by KBS from their wages.

## COUNT IV
### Illinois Minimum Wage Law (Illinois Class)

79. Pursuant to 820 Ill. Comp. Stat.105/4a, no employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than 1 1/2 times the regular rate at which he is employed.

80. During all relevant times, KBS was an employer within the meaning of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/3.

81. During all relevant times, Plaintiff and the Illinois Class Members were covered employees within the meaning of the Illinois Minimum Wage Law, 820 ILCS 105/3.

82. KBS failed to compensate Plaintiff and the Illinois Class Members at a rate of 1 1/2 times their regular compensation for hours worked in excess of 40 a week in violation of 820 Ill. Comp. Stat. 105/4a.

83. Pursuant to 820 Ill. Comp. Stat. 105/12, KBS is liable to Plaintiff and the Illinois Class Members for their unpaid overtime compensation, attorneys' fees, costs, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which the unpaid overtime wages remain unpaid.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, requests that the Court enter the following relief:

    a. Permission for individuals who performed satellite installation services for KBS in Illinois and Indiana during the past three years, were classified as independent contractors, and were not paid overtime for hours worked in excess of forty (40) a

    week, to opt in to this cation pursuant to § 216(b) of the FLSA;

b. Certification of a class, pursuant to Fed. R. Civ. P. 23, for individuals who performed work for KBS in Illinois ten years prior to the filing of the Complaint;

c. Certification of a class, pursuant to Fed. R. Civ. P. 23, for individuals who performed work for KBS in Indiana three years prior to the filing of the Complaint;

d. All damages to which the named Plaintiff and class members may be entitled;

e. Liquidated and multiple damages as allowed by law, including double damages for the FLSA claim;

f. Prejudgment interest;

g. Attorneys' fees and costs; and

1. Any other relief to which Plaintiff and Class Members may be entitled.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Date: January 8, 2018

Respectfully submitted,

AUNSHAWN HENDERSON, on behalf of himself and all others similarly situated,

By their attorneys,

 /s/ Robert E. DeRose
Robert E. DeRose (OH Bar No. 0055214)
Robi J. Baishnab (OH Bar No. 0086195)
BARKAN MEIZLISH HANDELMAN GOODIN DEROSE WENTZ, LLP
250 E. Broad Street, 10th Floor
Columbus, OH 43215
Telephone: (614) 221-4221
bderose@barkanmeizlish.com
rbaishnab@barkanmeizlish.com

Harold L. Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000

Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com

Sarah R. Schalman-Bergen (PA 206211) *
Camille Fundora (PA 312533) *
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
sschalman-bergen@bm.net
cfundora@bm.net

**Pro Hac Vice* Motion to be submitted